We'll hear argument next in Case 21-432, Arellano v. McDonough. Mr. Barney. Thank you, Mr. Chief Justice, and may it please the Court. When service-disabled veterans are discharged from the military, they have one year under 5110b1 to file a claim for retroactive disability compensation. This deadline operates like a statute of limitations by encouraging service-disabled veterans to promptly apply for retroactive benefits or else lose that right forever. The Irwin presumption in favor of equitable tolling applies to this one-year deadline because it's a non-jurisdictional claims processing rule set forth in a statute for which Congress has waived sovereign immunity. Now, the Secretary attempts to rebut the Irwin presumption by characterizing Section 5110 as a general rule subject to multiple exceptions, but that does not rebut the presumption. First, none of the other subsections the Secretary points to relate to service-connected disability compensation, which is the sole focus of 5110b1. For example, the Secretary relies heavily on subsection b4, but that sets a deadline for disability pensions, a different type of benefit passed by a different Congress at a different time. Other subsections set forth deadlines for dependency benefits, death benefits, and death pensions, none of which have any nexus to 5110b1. Not one of those other deadlines would be rendered superfluous by the application of equitable tolling to 5110b1. So this is not a situation where the deadline in question already includes an exception, an express exception, that would be swallowed by the application of equitable tolling. Here there are zero express exceptions to the one-year deadline of 5110b1. Finally, even if we accept the Secretary's argument that Congress provided equitable exceptions elsewhere in 5110, that only strengthens the Irwin presumption for 5110b1, because unlike in those other subsections, Congress chose to remain silent for 5110b1, which is exactly what we would expect Congress to do if they — if it wanted the general rule of equitable tolling to apply. And with that, I welcome the Court's questions. Counsel, I think it was wise of you to mention B-4 in your opening, because I think that's the biggest hurdle you've got to get over. That is a situation where Congress specifically addressed tolling in the case of disability preventing a timely filing. Now, you say, well, that was only for disability pensions. It had nothing to do, in your cases, of course, service-connected. But, you know, at least they were addressing that particular issue. And it seems odd to me to have express — I don't know whether it's tolling, right, in the one provision. But another one, which is the same sort of thing, the same question, does disability prevent you from filing, not have that there. I just — I guess I'd like you to expand a little further on the answer you gave just a moment ago. Thank you, Mr. Chief Justice. As you noted, B-4 does not apply to the same type of benefit that's at issue here. It's important to understand that 5110 includes what I would call a grab bag of different types of benefits that have been codified over the years into 5110. They were passed by different Congresses at different times. And B-4 is a perfect example. That particular benefit comes from the 1970s and doesn't have any nexus to the benefit that appears in subsection B-1, which dates back to at least 1958. So first of all, they're different benefits. With respect to what presumption or what inference should we draw from the fact that Congress saw fit to include some sort of equitable exception in B-4, the inference really should be the opposite of what you just suggested. If Congress saw fit to, in 1973, to include this equitable exception for disability pensions, which again are an entirely different type of benefit, but was silent, remained silent for section B-1, then the inference we should draw is that Congress intended to have the full general rule of equitable tolling applied to section B-1. Counsel, I have a question because you have set this up as whether or not we have a statute of limitations here because you're trying to take advantage of IRWIN and equal equitable tolling. But I typically conceive of statutes of limitations as having a funneling effect. So we have to sort of start at what is the background rule or principle. And in the ordinary course of affairs, the default rule is that a plaintiff can pursue their remedies at any time, their claims at any time, and a statute of limits their ability to pursue their remedies because we're trying to get them to do it quickly, because we're trying to preserve evidence, whatever the reason Congress gives, it's a sort of a funnel. Whereas when I read this statute, you start at B, but 510 has an A, which I think is actually setting the default rule in this circumstance, that the A is telling us that at the beginning we have a very limited set of circumstances in which veterans can claim this kind of compensation. A says unless specifically provided, the effective date shall be fixed in accordance with the fact found but not earlier than it sets the effective date as essentially the application date. And so if you look at it that way, we don't have a funnel in the structure of this because the background rule is the effective date is the date of application and what B is doing is giving some veterans under some circumstances more rights than they otherwise had. So maybe you can speak to whether I'm wrong about thinking that, and that, of course, sort of undermines your view that B relates to a right of retroactive compensation as the sort of background principle. Thank you, Justice Jackson. I don't disagree with you that subsection A1 sets forth a default rule. The default rule that it sets out is that veterans are only, for the types of benefits that are set forth in the preamble of subsection A1, that those benefits are only going to be prospective in nature. That's the default rule because they're only going to be measured from the date of the filing of the application. And then there are a series, but it says except as otherwise provided. Then there are a series of exceptions to that. And those exceptions, Congress, for different types of benefits, and, of course, the one we're dealing with here is 5110B1, which is a specific type of benefit for service-connected disability compensation. Congress has said we're going to allow retroactive benefits. That's different than A1. So it's a different type of ‑‑ it's an expansion, if you will, of what's allowed under A1. But to do so, you have to file by a certain deadline. But why is that a statute of limitation? If they are expanding the default and they're doing so conditionally, we're expanding the default if you file in a certain way, I don't understand why that operates like a statute of limitation. Your Honor, many statutes of limitations are in the form of exceptions to a general rule. And I can point to, for example, the statute of limitations that was at issue in Young. You find that statute of limitations in the bankruptcy statute. And what it is is actually an exception to the general rule in the bankruptcy statute that the debts of the bankrupt party are discharged. But doesn't Young really involve the same kind of funneling if you go back to the sort of original? I thought it kind of had the same structure if you went back far enough. It's similar. But my point being that in Young you had a general rule, which is debts of the bankrupt party should be discharged. Right. Except as set forth otherwise. And one of those exceptions was the three-year look-back period for the IRS to recover past due taxes if the IRS filed that claim within three years of the bankruptcy petition. So that was an exception to a general rule, and yet this Court found it to be a statute of limitations. A limited statute of limitations, albeit, but a statute of limitations nonetheless. And was that because Young was actually involving Congress trying to incentivize the government to act properly? Wasn't the reasons for a statute of limitations operating here in a way that they're not really in this case? I apologize. Your Honor, I think you're correct that the rationale, or at least part of the rationale the Court used in Young in determining that that particular provision of the bankruptcy code operated like or was a limited statute of limitations. One aspect the Court looked at was the fact that it did incentivize the IRS to file its claims in a timely manner in order to make sure that they come in within that three-year window. And so that is one of the hallmarks of a statute of limitations. But that applies equally here. 5110B1 encourages service-disabled veterans, once they're discharged from service, if they feel that they have a claim that's compensable, to file that claim promptly within one year. So that serves the same sort of benefit, as this Court pointed out in Young. Doesn't the failure to satisfy a statute of limitations typically result in the loss of the ability to prevail on a claim and not simply the loss of the ability to obtain a certain kind of relief? Sometimes, Your Honor, but not always. And so I go back to Young as an example. In Young, there was a statute of limitations that did not preclude the government, did not preclude the IRS from maintaining a claim against a taxpayer, even outside the three-year window. What it did was it eliminated certain advantages the government otherwise would have had, which is non-dischargeability and priority. But there was nothing about that particular statute of limitations that required the government to drop its claims, even if they were outside the three-year window. As an example, the government could — the IRS could maintain a four-year-old or a five-year-old claim against a bankrupt — against a bankrupt petitioner. And if the court ends up not ordering discharge for whatever reason, perhaps there was evidence of fraud, well, those claims, those older claims of the IRS can be maintained, and the IRS might even be able to recover on them, depending on the size of the estate. That's just one example of a statute of limitations that did not completely cut off the ability of the petitioner or the claimant to maintain and even recover on the claim. But even a — even assuming that this is a statute of limitations, the second step, which is — or the second question presented is, has Congress indicated that it doesn't want an equitable tolling rule to apply? I mean, when you have a statute that says, unless specifically provided otherwise in this chapter, one rule will apply, and then you have 16, I think, exceptions, specific exceptions, provided in this chapter, and this isn't one of them. And so the thing that you want is a 17th thing, which is not specifically provided in this chapter? I mean, doesn't that just — doesn't that language indicate that Congress didn't want a 17th thing? Your Honor, I would respectfully disagree that that is the correct characterization of 5110. It is true there are exceptions. As I mentioned, there's exceptions rolled in throughout different Congresses, and they get codified in Section 5110. The fact that it says specifically that's a word of emphasis, as this Court has held, most statutes of limitations are written with words of emphasis, things like, shall be forever barred. And as this Court found in Quy Phuong Hoang, that's of no moment to whether or not equitable tolling can apply to that statute of limitations. I think the key here is that each one of these benefits is discrete. A disability — a service-connected disability compensation is a very different type of benefit than a disability pension. They're awarded at different times in the veteran's life, and one of them is means-tested. The pension is means-tested, whereas a disability compensation claim is not means-tested. A disability pension doesn't even require a showing of service connection. So there are very different types of benefits. And so for each one of these unique types of benefits, Congress has established a pathway for retroactive claiming that wouldn't otherwise exist under the general rule, A-1, and has set forth basically a statute of limitations, saying if you want to benefit from this retroactive pathway, you have to file your claim within a certain period of time. So it very much operates like a statute of limitations. I'm not sure if I answered your question. I hope I did. Can you speak to how your contention about equitable tolling works as a practical matter? Who is making the decision, the agency? I mean, equitable tolling is ordinarily a judicial doctrine, kind of what Justice Alito was suggesting. So how is this working if we adopt your proposal? Thank you, Justice Jackson. As a practical matter, it would be decided in the first instance by the agency. Now, of course, this Court doesn't necessarily need to reach that question to decide this case, because we also have the Veterans Court. And the Veterans Court is an Article I court, and I believe this Court has already held on multiple occasions that Article I courts can have the power to equitably toll deadlines. But is that what you're asking for? Is it your view of this that the ordinary administrator inside the agency would apply the statute as written and say the effective date, you're outside of it, you don't meet any of the 16 categories, and then it would go to court, the Veterans Court, Article I, and that's where the equitable tolling would come in, or no? No, Your Honor. I apologize. I didn't mean to suggest that. I think the most practical way for this to be administered is for the agency itself to make that determination in the first instance. And I will point out that this is not new territory for the agency. In our reply brief on page 18, we cited to the regulation that's already on the books at the VA that allows the agency to extend deadlines for good cause shown. Yes, but that's the agency has its own regulation. You'd be asking us to order the agency to make a regulation about this? Because surely the individual claims administrator at her desk is not the one who's going to be deciding whether or not to depart from the rules, whether or not the circumstances are sufficient for equitable tolling. So I kind of hear you saying that this would have to be an agency determination. What are the circumstances in which we're going to depart? And so are you asking us to order the agency to promulgate a rule that would cover the equitable tolling circumstance? No, Your Honor. I'm not asking you to order the agency to do that. I believe the agency already has the power to do that. I think that's the point of Erwin, is that when Congress passes non-jurisdictional claims processing deadlines of the sort we have here, that those deadlines, merely by the silence of Congress, by saying nothing, that those deadlines are presumed to come prepackaged with equitable power to toll the deadline for good cause. I pointed to the regulation to illustrate the fact that the VA apparently has already assumed that it has such power, because extending deadlines for good cause is equitable. You're extending a statutory deadline for good cause, which means you're looking at things that are extenuating circumstances, and the VA actually has a body of law that it's already developed to make that determination at the agency level. So I guess my point was the VA apparently has already assumed it has this power. It already exercises this power in certain circumstances. However, it has ceased operating or using that power with respect to deadlines under 5110 because of the Andrews decision from the federal circuit. What other deadlines are at issue that they think they have the power on? The most often that that particular regulation comes into play are filings of notices of disagreement. So when a veteran misses the deadline for a notice of disagreement from the RO stage to the Board of Veterans' Appeals, they can ask the board, and if that's denied, they can ask the veterans court to extend that deadline retroactively using that particular regulation. The Solicitor General adds two other buckets of arguments, among others, in addition to the text. One is the immense practical problems, to use their phrase, that would be caused by a ruling in your favor, and they say that makes it especially implausible to allow equitable tolling or that Congress intended to allow it here. So that's one. The second is that the VA's longstanding regulatory practice has been in this direction and that Congress has not disturbed that. So I want to just make sure you get a chance to respond to both of those. Thank you, Your Honor. With respect to the practical problem, we're certainly not dismissive of that argument. We understand that there's realities to every new change in the law or recognition of new opportunities for people to seek certain claims. But I think that, in reality, the Secretary's assertion that this would cause a floodgate problem is overstated, and I can point to a few data points to sort of back that up. The first is, prior to the Andrews decision, which dates back to, I believe, 1990 or so, veterans were able to ask for equitable tolling, and some did, but it wasn't a floodgate. So prior to the Andrews decision, there didn't seem to be a floodgate problem. I've already mentioned that the VA has some equitable power to extend deadlines under the regulation that I noted, which is 38 CFR 3.109B. And we're not aware of any floodgate problem that that has caused with veterans, you know, breaking down the gates to request extensions of deadlines. There are some, but it's more described as a trickle. It's veterans who truly do have extenuating circumstances. And the last thing that I would point to on that particular point, Your Honor, is, of course, Article III courts and some Article I courts have the power to equitably toll deadlines. In fact, that's the general rule. Most deadlines in civil litigation are tollable, and I'm not aware that there's been a floodgate problem in the nation's courts with people breaking down the doors seeking equitable tolling. This Court has a well-developed body of law that the Veterans Court and the VA can draw upon to determine when, given a certain set of circumstances, should equitable tolling apply. And this Court has said that it should be applied sparingly, and we have no reason to believe that the Veterans Court won't follow that guidance. And so we expect this to be something that's applied sparingly, but in the cases where it's truly deserving and for veterans who truly do deserve consideration of an equitable tolling claim, it ought to be available. Your second question had to do with the longstanding – the fact that this regulation has been on the books and there's been a longstanding recognition of it. I'm assuming you're talking about the Andrews decision, Your Honor. Am I correct? So our response there is, as we explained in our brief, there actually was some among the judges who authored the Andrews decision as to whether it actually served as a categorical bar to equitable tolling. Justice – excuse me, Judge Newman, in a later – in a later dissent or concurring opinion in another case, Butler, made that point, that that's not what we meant in that decision. I think given that uncertainty, I think it would be not exactly correct to say that there is a settled understanding of both the Federal Circuit and Congress, for that particular deadline. Thank you, Counsel. Justice Thomas, Justice Alito, anything further? Thank you, Counsel. Thank you, Your Honor. Mr. Joshi. Thank you, Mr. Chief Justice, and may it please the Court. The Erwin presumption doesn't apply, and even if it does, it's been amply rebutted. As to applicability, I think as some of the questions have recognized, the question isn't whether, you know, clever lawyers can reconceptualize this provision as effectuating a partial limitations period with respect to a retroactive piece of the claim. The question is, did Congress view it that way? The premise of Erwin is that tolling is justified when Congress speaks in the language of limitations periods, because when it does that, it's invoking this deep common law tradition and pedigree. And I think if you look at 5110, it just doesn't look like that's the language Congress is speaking. But if you have doubts about that, you should have no doubts whatsoever that the presumption has been rebutted here for a number of reasons. And I guess I would put them in three main buckets. One is the text and structure of 5110 itself. It's sort of hard to imagine how Congress would have written it differently if it wanted to foreclose, any exceptions except for the ones specifically written in the test and what it wrote here. The second bucket would be the other. I'm happy to take questions. They could have said equitable tolling doesn't apply. So Congress could have been clearer. That's my only point. Fair point, Justice Kavanaugh. But I think equitable tolling, as even Erwin recognized, is an exception to the ordinary rule usually dictated by the separation of powers that courts apply the text that Congress wrote. It is framed as an exception to that rule, and it's framed as an exception precisely because, as Erwin said, it's likely to reflect congressional intent and I think Lozano later said statutory intent. But the point is equitable tolling is authorized only because we read text that looks like a limitations period as an implicit grant of authority to the judiciary to toll that particular deadline. But if Congress doesn't speak in that language, then there's no basis for that inference from congressional silence. And I think that's all Congress really needs to do. But as I said, I think there are many other indicia in the statute. You know, as I said, the text and structure of 5110. The second bucket would be the text and structure of other statutes in the veterans benefits area, both past and present. And then the third would be some just practical realities, all of which suggest that Congress could not have intended equitable tolling here. So can you speak to my just how would this work in terms of your understanding of the Petitioner's contention? Because you've said several times that we read the text of a statute that reads like a limitations period as an implicit authorization to courts that the idea of equitable tolling is permitted. But he appears to be suggesting that equitable tolling would operate in this context at the agency level. So can you just help me to sort that out? Certainly, Justice Jackson. I don't actually know if Petitioner agreed with that. I'm not sure what his position is. But that is a point of confusion for me as well, because I think the Irwin presumption and every case in which this Court has found the presumption applicable and not rebutted has involved a court of some sort applying equitable tolling to a deadline that was missed for a court. Now, it's not always, as this Court recognized in Beckler in a footnote last year, it's not always an Article III court. It can be a bankruptcy court or a tax court, but it's a court of some kind. But here the court would be reviewing agency action, usually to say is it supported by substantial evidence, is it arbitrary and capricious. And so I think the only sensible way to interpret tolling here would be that the agency, meaning the regional office and the board, would have to apply it in the first instance. That's a kind of tolling that's sort of unheard of. This Court has never applied the Irwin presumption or equitable tolling in that agency context like that. The few times it's come up, this Court has rejected it as an Auburn regional medical center. And so I think that's yet another reason to suggest that maybe Congress did not envision tolling as being applicable in this particular circumstance. What do you make of the Edgewood veterans brief and the prospect of some veterans being forbidden from disclosing information that's necessary to substantiate their claims? Would that be a circumstance in which there would be equitable tolling until the disclosure is made? So, Justice Alito, no. But I do think there are other ways to handle cases like that. And I suppose I've got two answers there, and maybe neither is going to be entirely satisfactory to you. But one answer is that the agency itself has taken a couple of steps to handle cases like that. One is that its internal processing manual, M21-1, does say that for at least the cases of special operations, if a veteran files a claim that requires classified information to support the claim, either the existence of the injury or the service connection for that injury, the regional office can submit what's called a classified research request to the central military records organization, which will then run that research request and then send back to the regional office, okay, there is credible evidence supporting the claim or not. And so that's one way to proceed. The other is, by regulation, the VA, and this was made explicit in a 2006 amendment to the regulation, but this is at 3.156 sub C of Title 38 of the Code of Federal Regulations, that says that if a claim is denied for lack of evidence and then classified records are later declassified, that would count as new and material evidence that a veteran could come in and seek reconsideration of the claim. And if, indeed, the agency then determines that the claim is supported in light of these declassified records, the benefits would be granted with an effective date of the original claim to begin with. Now, again, that's not maybe entirely satisfactory, but I think it's an attempt to address the problem. And then I guess my second answer would be, to the extent that doesn't completely solve the problem of these very sympathetic cases of the Edgewood veterans, I think unfortunately the answer is that that should be in Congress's hands to solve. These are special cases.  And because of that, I think fundamentally, it's going to be a question for Congress.  never had a claim with an agency. You've never had a claim with the Federal Torts Claims Act, correct? I disagree with that characterization of Wong v. Sotomayor. I recognize your concurrence in Auburn Regional pointed out that you've never had a claim with the Federal Torts Claims Act. You've never said you couldn't do that. Right. I think the majority pointed out that you've never actually said that. But in Wong, remember, it was a claim filed with the agency and it was untimely. But the question in Wong was not whether that filing with the agency could be equitably told. It was, instead, whether the failure to timely file it with the agency was a jurisdictional prerequisite for the case filed. Let's talk about why agency deadlines shouldn't be equitably told. First, assuming it's not this one, assuming it's subdivision L here, which entitles surviving spouses to benefits based on death or divorce if the application is filed within one year. Okay? So that sounds to me like a typical statute of limitations drop-dead date. You don't file within a year, you get no survivor's benefit. I disagree. You do get the survivor benefit when you file. It's just this is a kind of tolling rule itself in which if you file within a year – it's a grace period. If you file within a year of the triggering event, the agency, by statute, treats you as if you had filed on the date of the event. But if it takes you longer than a year and you file, you get benefits starting I thought, and I'll have to go back, that there are some cases below in which benefits haven't been given to spouses who passed, who filed late, that some courts have said this operates as a drop-dead date. I pardon the expression, okay? But you're conceding on behalf of the government that those decisions, if I'm right about them, if they exist, that they were wrong? So with respect, I'm not sure I'm aware of those decisions, so I don't want to confound them. I'll have to look at them, okay. So you see all of those, like L and the one with dependent children that have to file within a year of turning 18, that all of those would still entitle both the spouse and the child to get benefits after the year? My understanding is that these exceptions to the default effective date rule in 5110 simply operate as grace periods, but they don't determine whether you're entitled to benefits at all. They determine only whether if you file within a year of a triggering event as a grace period, we treat you as if you filed on the triggering event. But there may be, I fully concede, there may be other limitations to getting benefits that may or may not be fulfilled by a certain claimant, and those might involve time limits. I don't know. Some of them very well might. I do know, as Mr. Barney said, that the disability compensation and pension in B-4 do not have a time limit of that sort. So basically you would accept Justice Kagan's point, which is we don't have to reach the first issue writ large of whether equitable tolling applies to agency deadlines in all or no situations. On the second prong of the question, you're arguing that Congress has spoken to that. That's exactly right. And indeed, in Brokamp, that's exactly the approach this Court took. The Court said we assume for argument's sake that this is tollable and that the Erwin presumption applies, but in this case all the statutory indicia have rebutted that presumption. And we think that would actually be a perfectly sound way to proceed in this case because however strong our arguments are on the inapplicability of the presumption, I think they're even stronger and more clear that any such presumption would have been rebutted in this case. Thank you, counsel. Just to put Justice Sotomayor's point, as I understand it, in slightly different terms, there is plenty of indication in the statute, arguably, to support your contention that Congress specifically made clear no equitable tolling. Okay. I got that. But there's less evidence, I think Justice Sotomayor is saying, and this is my instinct too, that Congress meant to distinguish between courts and agencies because some of those 16 things you point to could be described as equitably tolling the period for benefits in certain circumstances at the agency level, not just at the court level. Is that a fair summary? Yes, but I think that's a point in our favor. I understand. I got that. But is that a fair summary, that some of those exceptions deal specifically with agency and agency time limits and toll, for a better word, benefits determinations for them? Yes. I think that's fair. And I think the point here is that Congress has provided for that. Right. And so judicial tolling would be tolling on tolling. I got that. I got that. Thank you. Counsel, I'm not sure which way your emphasis on the 16 exceptions really cuts. I mean, if there are 16 exceptions to the rule, that kind of suggests to me that the insistence upon strict enforcement is really not that important. I mean, your friend points out that these things came in at different times and different considerations. To me, the sort of strict notion of sovereign immunity, I mean, you've already compromised it quite a bit, and yet you're going to insist on it when it comes to service-connected disability. That seems, in other words, the plethora of exceptions seems to me to make it more difficult to allow equitable tolling. So I disagree, Mr. Chief Justice. That's certainly not how this Court has framed it in cases like Brokamp. Well, Brokamp, I mean, that's the Internal Revenue Code, right? I mean, no, you've got to turn square corners or whatever it is whenever the, you know, on your taxes. That's a whole different arena. Fair enough. But in all of the cases. You don't want the equitable principles that govern the government's collection of taxes to apply across the board, do you? Perhaps not, but I think this Court has generally, not just in this area in each of its cases, but just as a general matter, I think the notion that if Congress gives an inch, we should just assume it gave a mile doesn't really apply as a sound principle of statutory interpretation. But that is, with respect, that is exactly the principle that applies. Now, your client may not have had a very good lawyer in Irwin, but this is what the Court said on precisely that point. Once Congress has made such a waiver of sovereign immunity, we think that making the rule of equitable tolling applicable to suits against the government in the same way, let me see if I can get it, in the same way that it is applicable to private suits amounts to little, if any, broadening of the congressional waiver. It's sort of once you're, you know, once you've waived, you know, the situation is entirely different, at least that's what the Court, you know, said in Irwin. I understand, Mr. Chief Justice, but in Irwin, I think the Deputy Solicitor General in that case agreed that the language of Irwin was that of a statute of limitations. It was, you know, the time to file. Well, he may have given up a lot. I thought he did an excellent job. Thank you.  But, no, I mean, the basic proposition, and the six, I guess this is really a repetition of the 16 exceptions point, sort of once you've waived sovereign immunity, then you're in the normal arena and all the principles that would apply to regular litigation ought to apply to you. Well, I think the unless specifically provided otherwise in this chapter is exactly the kind of emphatic language Congress would pit in to say, although we have waived sovereign immunity with respect to these kinds of claims, when it comes to this effective date provision, this is the effective date and no others unless we write them in this chapter, and you have to apply them as we specifically provide in this chapter. I think those are the indications Congress is saying, look, we're waiving sovereign immunity, but we are building a wall here, so courts don't go beyond what this wall is. And I think that really distinguishes this case from Irwin. And it does make it. Roberts. I'm not sort of, you know, sliding into the pro-veteran canons, but does it make any sense as an abstract matter to say the one area where we're not going to waive it, where we're going to insist on strict adherence, is service-connected disabilities? I actually think it does, Mr. Chief Justice, and only because that's how I read these statutes. So I fully accept that these are intended to be very solicitous of the veteran and the claims, and if you look at the structure of the statute, there is no statute of limitations. For many years, beginning with the earliest veterans' benefits statutes in 1873, moving on until the 40s, there was a 5-year statute of limitations for filing these kinds of claims. Congress got rid of that, so there's no more statute of limitations as this Court has recognized. There is no res judicata, so the claimant can continue to bring the claims as long as he has new and material evidence, and the agency will reconsider it, and in some cases assign an effective date back to the original application date. But the one thing Congress has said is, as solicitous as this program is, in 5101a1a, Congress made clear that it is the filing of an application in the form specified by the Secretary. It must be filed in order for benefits to be paid. So I think what Congress is doing is being very solicitous on the one end, but then also saying the application for benefits is not the same as, like, filing a lawsuit. It is an element of your entitlement to benefit. And it's 38 U.S.C. 5101a1a. It is the provision that says that an application must be filed for benefits to be paid. I'm afraid it's not in our statutory appendix in the brief. We cite only 5110. But we do cite 5101a1a in our brief. But I think the whole structure of the statute is set up to say it's the application that sort of triggers the entitlement to benefits in a way. That's when the agency's duty to help the claimants and provide information and help the claimant get the medical exams necessary to support the claim. That's when all of those duties kick in. That's where the agency's duty to, you know, under 5102, for example, says that if a defective application is filed, then the claimant has a year to correct any deficiencies, and the agency has some duties to help them to do that. I think that's, you know, everything is triggered by the application. And so unless the application is filed, I think it makes perfect sense that Congress would look at it and say the effective date should not be earlier than the application date unless we say otherwise. And then 16 times, in emphatic and repeated ways, it says at most you can get one year beforehand, which kind of makes sense if you're looking at trying to just sort of get some certainty about the potential burden on the public fisc and not have like an unbounded liability out there that you don't know about. The application is what triggers the agency's knowledge of these claims. And that all sort of makes sense. Indeed, if you look at 5102 addressing deficient applications, Irwin itself identified one reason where equitable tolling might be justified is if a claimant diligently pursues his claim, such as by filing a defective claim within the limitations period, that's a reason for equitable tolling. Well, I think 5102 suggests that Congress has thought about that problem and addressed it in the statute, which I think is just further evidence that equitable tolling is really not appropriate in this particular context. On your first point, Mr. Joshi, and really the first thing you got up there and said was, look, the Irwin presumption doesn't apply at all. You know, even if some clever lawyer can reconceptualize this in statute of limitations type terms, we all know it's not really that. And I guess I had a, you know, I didn't quite agree with that. But, you know, it seems like Lozano says very clearly that we're supposed to consider this question of what a statute of limitations is in a functional way, not in a formal way. And you were suggesting, well, there has to be some kind of formal characteristic that Congress has, there are formal characteristics of statute of limitations that Congress has to incorporate when it writes a provision. And if Congress doesn't do it in that way, the presumption doesn't kick in. So I think it's actually a bit of both. I think the functional characteristics are certainly a necessary feature to trigger the Irwin presumption, as Lozano makes clear. But I also think there's a secondary feature, which was essentially, or in part at least, the motivation of Lozano's alternative holding, which was that, look, this is a treaty, and, of course, treaty makers don't draft against the backdrop of this common law rule. And Irwin heavily relied on the common law rule in order to conclude that it was likely to be reflective of congressional intent. And so I do think there is this notion that if Congress writes something that doesn't, you know, walk and quack like a statute of limitations, then Congress is saying  I don't know what that means. It doesn't walk and quack like a statute of limitations. If it in fact functions like a statute of limitations, then whatever words Congress has used should be, you know, you know, sometimes Congress writes some sets of words and sometimes some others, and there shouldn't be some magic set if it in fact functions like a statute of limitations, which is, I think, the point here. And, look, at the end, I might concede that, but I do think it does matter how Congress constructs these things in terms of, like, how carefully are you going to slice and dice what's actually going on in order to tease out some portion of it that sort of looks like a limitations period. And, in fact, here, I don't even think, even accepting everything you said, I don't even think this looks like a limitations period. Even with respect to a myopic focus on just be one, I don't think it works like a limitations period, because if it were a limitations period, essentially the way it would operate if you accept that framing is the first month's worth of retroactive benefits has an 11-month statute of limitations. The second month has a 10-month statute of limitations. The third month, and so on and so forth. And then it falls off a cliff at 13 months. That's not how statutes of limitations function in the ordinary sense. And, you know, I'll note that Petitioner is not asking for the benefits he accrued between 1981 and 1982. Nor is he asking for the benefits he accrued between 2010 to 2011. He's asking for 1981 to 2011. In other words, every month delayed filing increased the amount of the benefits by a month. I know of no statute of limitations that works in that fashion. So even if we want to look only at be one and then treat it as a retroactive claim, I still don't think this functions as a statute of limitations. Unless the Court has further questions. Roberts. Justice Jackson. Okay. Thank you, counsel. A rebuttal, Mr. Barney. Yes, Your Honor. I'll be very brief. On that very last point in the briefing, we pointed out that the patent damage of the statute is one example of a statute of limitations that does, in fact, operate in that manner. It is true that patent infringement is considered a separately accruing tort. But so, too, by analogy is a veteran's disability, service-connected disability. Every month that goes by that that veteran is service-disabled, he or she is entitled to monthly compensation under the statute. So every month that goes by can be analogized to a separately accruing claim. I want to just circle back to one of the questions that Justice Sotomayor asked, and that had to do with whether statutes of limitations that exist at the agency level can be told, and you are absolutely correct, Your Honor, this Court has already ruled that such statutes of limitations can be told. Zipes is an example of that. And also the companion case to Kwai Fong Wong, which was June, had to do with the filing deadline at the agency level. I believe what my colleague on the other side was getting at in his response to your question was this Court has not yet addressed the question of whether the agency itself can toll one of those deadlines as opposed to a court reviewing the agency's action. And I believe that goes to your concurrence in the Auburn case where you made the point that the Court has not yet said one way or the other whether that's the case. And I would just like to address that at a very high level. As Justice Gorsuch pointed out in his questioning, Congress clearly has the power to extend equitable powers to an agency. There's no question about that. And normally we would expect Congress to do so explicitly. But in Irwin, there's one exception to that. In Irwin, the exception is for non-jurisdictional claims processing deadlines, Congress need not be explicit about the grant of equitable power. It may do so implicitly. In other words, silence itself, it will be construed, absent evidence to the contrary, that Congress intended that particular deadline to become prepackaged with the equitable power to toll it for good cause. And if that deadline is being directed to an agency, there's no reason to believe that that power doesn't extend to the agency. With that, unless Your Honors have any other questions, I don't have anything  Thank you, Counsel. Counsel. The case is submitted.